# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| CADENCE BANK, N.A., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 3:17-cv-01170** |
| DLO TITLE, LLC, | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Plaintiff Cadence Bank, N.A. ("Cadence") brings suit in diversity against defendant DLO Title, LLC ("DLO"), asserting a single claim of negligence and seeking to recover damages in excess of $800,000. Now before the court is DLO's Motion to Dismiss. (Doc. No. 10.) For the reasons set forth herein, the court will grant the motion. The court will, however, deny DLO's Motion for Sanctions. (Doc. No. 19.)

## I.     Factual Allegations and Procedural Background

According to the allegations in the Verified Complaint, Cadence is a national banking association whose main office is in Alabama. DLO is a title company based in Williamson County, Tennessee. (Doc. No. 1, Compl. ¶¶ 1, 2.)

In May 2006, non-party Richard Cammeron executed a Home Equity Line of Credit Agreement (the "HELOC") in favor of Cadence in the principal amount of $1,200,000. (Compl. ¶ 6; HELOC, Doc. No. 13-1.) The HELOC was secured by Cammeron's residence, located at 1008 Monroe Lane, Brentwood, Tennessee (the "Property"), as set forth in the HELOC itself and as evidenced by a Home Equity Line Deed of Trust ("Deed of Trust"), executed by Cammeron and his wife, Margo Cammeron. (Compl. ¶¶ 7–8.) The Deed of Trust required Cammeron to pay

off the HELOC with the proceeds of any sale of the Property. (*Id.* ¶ 9.)

The Deed of Trust was duly recorded in the office of the Williamson County Register of Deeds and, for a period of time, constituted a validly perfected first priority consensual lien upon the Property. (Compl. ¶ 8.) However, in December 2012, in connection with the payoff of other loans by Cammeron, but not the HELOC, Cadence recorded a Release of Instruments in the office of the Williamson County Register of Deeds, accidentally and incorrectly releasing Cadence's Deed of Trust on the Property securing the HELOC. (Compl. ¶ 10; Release of Instruments, Doc. No. 24-2.) Neither Cadence nor the Cammerons were aware of the accidental release in December 2012. (Compl. ¶ 11.)

Richard Cammeron continued to make timely interest-only payments on the HELOC over the next couple of years. In September 2014, the Cammerons agreed to sell the Property to third party Christopher Bostick for $1,100,000, as documented by a Purchase and Sale Agreement ("PSA") dated September 20, 2014. (Compl. ¶ 12; PSA, Doc. No. 24-1.) The PSA also provided that the sale of the Property would be contingent upon "short sale approval by sellers' lender." (PSA, Doc. No. 24-1, at 12; *see id.* at 13–14 ("Short Sale Addendum").)

In October and November 2014, in preparation for the closing, the Cammerons hired Daryl McCubbin, a local investor, to negotiate the terms of a short sale of the Property with Cadence (Compl. ¶ 13), since the negotiated sale price was less than the amount due on the HELOC.

The Cammerons and Bostick agreed to use DLO to close on the sale of the Property. In anticipation of closing, in October and November 2014, the Cammerons or their agent requested from Cadence information regarding the HELOC's pay-off amount and then engaged in written negotiations with Cadence concerning a short sale, meaning that Cadence would receive

somewhat less than the full amount owed on the HELOC. Cadence specifically alleges that DLO was included on emails regarding the negotiations, was aware of the short-sale negotiations, and knew that the parties intended for the sale and closing to be a "short sale transaction." (Compl. ¶ 14.) On October 28, 2014, DLO prepared a draft HUD-1 Settlement Statement documenting an anticipated pay-off to Cadence. On November 14, 2014, DLO was included on another email thread, stating that the sale would be a short sale and, on November 25, 2014, DLO requested a new pay-off statement from Cadence, reflecting a December 1, 2014 closing date. (*Id.*) Cadence responded to both requests from DLO, sending two separate payoff statements for the HELOC that identified the amount to be paid at closing to pay off the balance on the HELOC. (Compl. ¶ 15.)

The closing on the sale of the Property to Bostick took place on December 1, 2014. Despite actual knowledge of the amount due and owing on the HELOC, DLO, apparently acting as escrow agent,[1] distributed the net proceeds of the sale to the Cammerons, rather than tendering the pay-off amount or any agreed short sale amount to Cadence. (Compl. ¶ 16.) Cadence alleges that DLO made that decision, "[d]espite knowledge" that deeds of trust, in accordance with "industry standard," typically contain so-called "due on sale clauses." (*Id.*)[2] Cadence has not produced a copy of the escrow agreement between the Cammerons, Bostick, and DLO, but it does not allege that the escrow agreement in any way incorporated reference to

---

[1] Cadence never actually identifies DLO as the escrow holder, but the factual allegations in the Complaint establish that DLO was acting as such. *See Parrott v. Parrott*, 48 Tenn. 681, 688, 1870 WL 2735, at *3 (1870) ("An escrow is concisely defined as a conditional delivery of a deed to a stranger, and not to the grantee himself, until certain conditions shall be performed, and then it is to be delivered to the grantee."); *see also* ESCROW, Black's Law Dictionary (10th ed. 2014) ("A legal document or property delivered by a promisor to a third party to be held by the third party for a given amount of time or until the occurrence of a condition, at which time the third party is to hand over the document or property to the promisee.").

[2] Cadence does not state whether it actually reached an agreement with the Cammerons regarding a short sale.

Cadence or required distribution of funds to Cadence. In the absence of such allegations, the court can only infer that the escrow agreement did not require DLO to distribute the proceeds from the sale of the Property to Cadence and, instead, required distribution of the funds to the Cammerons.

Cadence was unaware that the sale of the Property had closed, and Cammeron continued to make regular monthly payments on the HELOC to Cadence until the loan matured on May 16, 2016. At that time, Cammeron failed to make a timely final payment of the full amount due on the HELOC, and Cadence discovered that the Deed of Trust had been "incorrectly released" and that the Property had been sold to Bostick. Upon maturity, Cammeron owed $1,084,198.23 on the HELOC. (Compl. ¶ 17.)

Cadence filed suit against the Cammerons in 2016 to recover the amount due on the HELOC. *Cadence Bank, N.A. v. Cammeron*, No. 3:16-cv-02384 (M.D. Tenn. Sept. 7, 2016) (the "Cammeron Lawsuit"), asserting various claims grounded in tort and contract. (Compl. ¶ 19; Cammeron Compl., Doc. No. 13-2.) The Cammeron Lawsuit eventually settled with the sale of the HELOC and other loan documents to a third party for the gross amount of $475,000, substantially less than the amount owed to Cadence on the HELOC. (Compl. ¶ 19.)

Cadence filed this lawsuit against DLO on August 17, 2017, asserting a single count of negligence. It claims that DLO owed Cadence a duty of reasonable care in closing on the purchase and sale of the Property, "which included the duty of reasonable care applicable to professionals in such situations"; that, by disbursing the proceeds of the sale to the Cammerons rather than to Cadence, despite actual knowledge of the HELOC indebtedness due and owing from Richard Cammeron to Cadence and despite knowledge that most mortgage instruments contain due-on-sale clauses, DLO breached its duty of care to Cadence; that DLO's breach of its

duty of care was the proximate cause of damages to Cadence; and that Cadence suffered damages of "not less than" $866,069.84. (Compl. ¶¶ 22–26.)

In response to the Complaint, DLO has filed its Motion to Dismiss and supporting Memorandum (Doc. Nos. 10, 11), asserting that dismissal is required because the plaintiff's claim is barred by (1) settlement and release; (2) accord and satisfaction; (3) failure to allege facts to support each element of a negligence claim; (4) the statute of limitations; (5) lack of standing, and (5) *res judicata*. Filed with its motion are numerous exhibits, including the HELOC, the Cammeron Complaint, the Settlement Agreement between Cadence and the Cammerons, the Loan Purchase Agreement between Cadence and a third party, and the Joint Stipulation of Dismissal and Agreed Order of Dismissal entered in the Cammeron Lawsuit. (Doc. Nos. 13-1 through 13-7.)

Cadence filed a Response in Opposition to Defendant's Motion to Dismiss, addressing each of the defendant's arguments. (Doc. No. 18.) In addition, while it does not dispute that some of the documents submitted by DLO in support of its Motion to Dismiss were referenced in the Complaint, Cadence asserts that these documents are not actually "central" to its claim. (Doc. No. 18, at 6.) It nonetheless introduces another document, a Representation Disclosure executed by and between the Cammerons and DLO (Doc. No. 18-1), to refute DLO's argument that it functioned as attorney or agent for the Cammerons in the closing on the sale of the Property.

DLO filed a Reply (Doc. No. 24) as well as additional documents, including the PSA between the Cammerons and Bostick, the Release of Instruments referenced in the Verified Complaint, and Initial Disclosures produced by the Cammerons in the Cammeron Lawsuit. (Doc. Nos. 24-1 through 24-3.) Cadence, with the court's permission, filed a Sur-reply. (Doc. No. 29.)

## II.     Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]

---

[3] DLO's Motion to Dismiss is ostensibly brought under Rule 12(b)(1) too, as it asserts that the plaintiff lacks standing to bring the claim and, as a result, that the court lacks jurisdiction over the matter. As a facial attack to subject-matter jurisdiction, the Rule 12(b)(1) aspect of the motion is governed by essentially the same standard as that applicable to a Rule 12(b)(6) motion. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). The court notes that DLO's standing argument essentially conflates the concept of failure to state a claim with lack of standing. The fact that the court finds, as set forth below, that the plaintiff cannot establish the necessary elements of a negligence claim does not lead to the conclusion that the plaintiff lacks standing or that the court lacks jurisdiction even to make that determination. *See, e.g.*, *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982) ("The requirement of standing focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." (internal quotation marks and citation omitted)); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)

**III.     Consideration of Matters Outside the Pleadings**

As indicated above, numerous documents have been presented to the court in connection with the Motion to Dismiss. Rule 12(d) provides that, if, in support of a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The obligation to treat a motion to dismiss as a summary judgment motion is mandatory if matters outside the pleadings are not excluded by the court. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006) (applying Rule 12(d) to a Rule 12(c) motion). However, a court may consider matters outside the pleadings without converting the motion to a Rule 56 motion if the documents are "incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed.), *cited in Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

DLO maintains that the documents it has presented to the court are either public records of which the court may take judicial notice or are referred to in the Complaint and central to Cadence's claims. (Doc. No. 11, at 6.) The plaintiff contends that most of the documents in question are not actually "central" to its claim. However, rather than arguing that the motion should or should not be converted into one for summary judgment, Cadence has submitted the DLO Representation Disclosure executed by the Cammerons in connection with the closing on the sale of the Property to Bostick. The plaintiff contends that this document directly refutes DLO's claim that it functioned as the Cammerons' attorney or agent.

---

("Motions to dismiss under 12(b)(6) for failure to state a claim generally are distinct, procedurally and substantively, from motions to dismiss under 12(b)(1).").

The court finds that those documents submitted by the defendant that were filed in the Cammeron Lawsuit are matters of public record of which the court may take judicial notice. *See, e.g.*, *In re Moncier*, 488 F. App'x 57, 61 (6th Cir. 2012) (noting that the district court was permitted to take judicial notice that briefs filed in other cases in the same court, "which were public records," were signed by the appellant); *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[F]ederal courts may take judicial notice of proceedings in other courts of record." (citation omitted)). Several of the other documents filed with the defendant's Motion to Dismiss and Reply—including the HELOC, the PSA, and the Release of Instruments, and the Settlement Agreement—are incorporated by reference into the Complaint and sufficiently integral to Cadence's claim that the court is not required to exclude them in order to avoid converting the Motion to Dismiss into a Rule 56 motion. The court will, however, exclude from consideration the Loan Purchase Agreement between Cadence and a third party and the DLO Representation Disclosure, as these documents are not integral to Cadence's claim in this case, nor are they necessary to the court's resolution of the defendant's motion.

## IV.     Discussion – Motion to Dismiss

DLO has adopted a scattershot approach to this case, apparently hoping that if it discharges enough bullets, one of them will actually hit the target. And, while many of DLO's arguments are wildly off the mark, one actually hits it: Cadence cannot establish the existence of a duty of care owed by DLO to Cadence, for purposes of asserting a negligence claim.

### A.     The Parties' Arguments

There is no dispute that Tennessee law governs the state law negligence claim raised in this diversity action. To establish liability for negligence under Tennessee law, the plaintiff must prove "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant

falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause." *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005). DLO argues, among other things, that the allegations in the Complaint are insufficient to establish the existence of a duty owed by DLO to Cadence.

In support of that position, DLO maintains that the Complaint contains only "boilerplate, broad, legal conclusions couched as factual allegations." (Doc. No. 11, at 11.) In its Reply, it further asserts that a title company "owes a duty to the purchaser [of real property], the purchaser's lender and the title insurance underwriter to deliver clear title" and that it "pays off secured lenders who hold a valid mortgage or lien on any property in order to satisfy the title company[y's] obligations to the parties to the transaction (i.e., the seller, buyer, buyer's lender and title insurance underwriter), not out of any duty or obligation to a secured creditor. Building on that princip[le], a title company owes no duty and has no obligation whatsoever to an unsecured creditor." (Doc. No. 24, at 11.)

Cadence, for its part, argues that the Complaint adequately alleges the existence of a duty and breach of that duty, as follows:

> 22. DLO owed Cadence a duty of reasonable care in closing the purchase and sale of the Property, which duty of care included the duty of reasonable care applicable to professionals in such situations.
>
> 23. By disbursing net closing proceeds of the sale of the Property to the Cammerons instead of distributing such proceeds to Cadence to satisfy Mr. Cammeron's HELOC obligations, despite actual knowledge of the HELOC indebtedness due and owing from Mr. Cammeron, despite express knowledge of at least two payoff letters from Cadence, despite actual knowledge of the intended use of the proceeds to pay off the indebtedness owed to Cadence, and despite knowledge of due on sale clauses contained in mortgage instruments, DLO breached its duty of care owed to Cadence.

(Compl. ¶¶ 22–23.) Cadence argues, generally, that it should be entitled to offer expert proof as to the standard of care owed by a title agency to secured creditors of which it has actual

knowledge.

**B.      Tennessee Law on the Existence of a Duty**

"Although not originally required under the English common law, duty has become an essential element of all negligence claims," and it is "a question of law to be determined by courts." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008). The Tennessee Supreme Court has defined the duty of care as "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008) (citation omitted).

Tennessee recognizes that "[m]embers of a civil society, as a general rule, must refrain from committing affirmative acts that a reasonable person should recognize as subjecting another to an unreasonable risk of harm or posing an unreasonable risk of invasion to another's interests." *Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 531 (Tenn. Ct. App. 2011) (citation omitted). However, the Tennessee courts also recognize the "economic loss" doctrine, "a general principle that prohibits the recovery of purely economic damages for negligence when the plaintiff lacks privity of contract with the defendant." *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 430, 431 (Tenn. 1991). As an exception to the economic loss rule, Tennessee has adopted the Restatement (Second) of Torts § 552, which permits liability despite the absence of privity when a third party justifiably and foreseeably relies on a professional's misrepresentation and suffers economic damages as a result.[4] *John Martin Co.*, 819 S.W.2d at 430, 431 (Tenn.

---

[4] The Restatement provision adopted by the Tennessee courts states:

   (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss

1991); *see also Stinson v. Brand*, 738 S.W.2d 186, 190 (Tenn. 1987) (noting that the Tennessee Supreme Court had adopted "the principles later approved by the American Law Institute in [the] Restatement (Second) of Torts 2d, § 552 (1977) in connection with the liability of business or professional persons who negligently supply false information for the guidance of others in their business transactions," which "could apply to attorneys as well as to land surveyors, accountants, or title companies" (citing *Tartera v. Palumbo*, 453 S.W.2d 780 (Tenn. 1970))).

In this case, the plaintiff does not allege an express misrepresentation by DLO—or any representation at all—upon which it justifiably relied to its detriment. The claim, therefore, does not appear to fall within the purview of § 552 of the Restatement and is barred by the economic loss doctrine.

### C. Escrow Holders Do Not Owe General Duty of Care to Third Parties

Moreover, although the Tennessee courts have not addressed a situation factually similar to the one presented here, those few courts in other jurisdictions that have done so have uniformly concluded that a title company/escrow holder owes no duty of care to a third party to the transaction, absent special circumstances.

---

caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552 (1977)

Most directly on point is *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.*, 41 P.3d 548, 549 (Cal. 2002), in which the California Supreme Court held that a title company functioning as an escrow holder does not owe a duty of care to a nonparty to the escrow based on an assignment to that nonparty by another nonparty to the escrow. That case involved a promissory note to Talbert Financial, which was secured by a deed of trust on the maker's real property. At the same time that the deed of trust was recorded, another assignment of the beneficial interest in the note and deed of trust from Talbert to plaintiff Summit Financial Holdings was also recorded. The maker of the note was unaware of the assignment to Summit and continued to submit payments to Talbert.

The maker subsequently obtained a new loan from another lender, the proceeds of which were used in part to pay the Talbert note. The maker and the new lender employed the defendant title company to "act[] as an escrow holder in connection with issuing the title insurance for the new deed of trust securing the new note payable to [the new lender]." *Id.* at 550. Neither Talbert nor Summit was a party to the escrow agreement. Although the defendant prepared a preliminary title report noting that the Talbert note and deed of trust had been assigned to Summit, documenting its actual knowledge of that assignment, the defendant nonetheless paid Talbert from the funds deposited by the new lender in accordance with the payoff demand and the escrow instructions. Despite an apparent contractual obligation running from Talbert to Summit, Talbert did not remit those funds to Summit.

Summit sued the escrow holder/title company for negligence, contending that it breached its duty of care to Summit by making the payment due under the note to Talbert rather than to Summit, in light of its actual knowledge of the recorded assignment. The California Supreme Court held, however, that the defendant title company owed no duty of care to Summit, despite

its knowledge of the assignment. In reaching that conclusion, the court stated:

> An escrow involves the deposit of documents and/or money with a third party to be delivered on the occurrence of some condition. An escrow holder is an agent and fiduciary of the parties to the escrow. The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. If the escrow holder fails to carry out an instruction it has contracted to perform, the injured party has a cause of action for breach of contract.
>
> In delimiting the scope of an escrow holder's fiduciary duties, then, we start from the principle that an escrow holder must comply strictly with the instructions of the parties. On the other hand, *an escrow holder has no general duty to police the affairs of its depositors; rather, an escrow holder's obligations are limited to faithful compliance with the depositors' instructions.* Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions.

*Id.* at 551–52 (emphasis added; internal quotation marks, citations, and brackets omitted). As there were no allegations that the defendant "was aware of any collusion or fraud in the fund disbursement that would have adversely affected any party to the escrow," *id.* at 552, the court held that the defendant had no duty to release the funds to the plaintiff.

The court specifically rejected the plaintiff's claim that "all persons are liable for injuries caused by their negligent conduct." *Id.* Rather, the court recognized that, as in Tennessee, as discussed above, "a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule, in negligence law." *Id.* at 554 (citation omitted). The court also approved the state appellate court's application of a six-factor balancing test to a claim that a professional owes a duty to a third person with whom he is not in privity, including "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." *Id.*

(citation omitted). The court adopted the appellate court's application of that test, as follows:

> First, the transaction CLTC undertook was not intended to affect or benefit Summit. CLTC was engaged by [the lender and the note-maker] to assist them in closing a loan transaction between [themselves], and any impact that transaction may have had on Summit was collateral to the primary purpose of the escrow. Second, although the certainty of injury element is satisfied because the evidence supports the conclusion that Summit did not receive the funds paid to Talbert, the foreseeability of harm element does not support a duty because there is no suggestion CLTC could have foreseen that Talbert would not disburse the funds to Summit. With regard to the moral blame factor, compliance by CLTC with its fiduciary duty to follow the instructions of the parties to the escrow was not blameworthy and is, instead, a policy consideration that militates against concluding the company had a tort duty in this case. Finally, there is not a sufficiently close connection between the payment of Talbert and the injury suffered by Summit to warrant imposition of a duty of care. Although the payment to Talbert was found by the bankruptcy court to have extinguished [the maker's] obligation under the note, Summit's injury was caused by Talbert's breach of its contractual obligation to Summit.

*Id.* at 554–55 (citation and footnote omitted).

The court concluded: "We decline to adopt a rule that would, by subjecting an escrow holder to conflicting obligations, undermine a valuable business procedure, and we therefore affirm the judgment [in favor of the title company]." *Id.* Other courts, in California and elsewhere, are in accord. *See, e.g.*, *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 375 P.3d 651, 655 (Wash. 2016) (holding that a title company does not owe a duty of care to third parties in the recording of legal instruments, stating: "Washington law treats professional duties as discrete duties owed to clients—absent a special relationship, we have extended a professional duty of care to third parties only (1) when the third party is an intended beneficiary, (2) when the third party justifiably relied on a professional's representations under a theory of negligent misrepresentation, or (3) when a professional is best able to mitigate the risk of a physical injury."); *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 355 P.3d 965, 972 (Utah 2015) (holding that a title insurer/escrow agent owed a fiduciary duty to a lender who was not a

formal party to the escrow agreement but who was identified as an intended third-party beneficiary and expressly named in the escrow instruction, but noting that an escrow agent "has no duty to a nonparty with a mere incidental interest in the escrow transaction"); *TSF 53419, LLC v. Fid. Nat'l Title Ins. Co.*, No. B232445, 2013 WL 1750981, at *5–7 (Cal. Dist. Ct. App. Apr. 24, 2013) (*citing Summit Financial* and holding that an escrow agent owed no duty of care to a third party, despite actual knowledge of the third party's claim of entitlement to funds to be disbursed, and the third party's objection to the disbursement of funds to a different party, in connection with the sale of real property, stating: "By faithfully following the instructions of the parties to the escrow, Fidelity satisfied its obligations as an escrow holder and cannot be liable to third parties . . . for doing so."); *Luce v. State Title Agency, Inc.*, 950 P.2d 159 (Ariz. Ct. App. 1997) (holding that a title company did not owe a professional duty of care to protect a third party from foreseeable harm when it gratuitously recorded a deed of trust on behalf of a lender without the approval of his limited partners, despite actual knowledge that the partnership agreement did not authorize the lender to do so without that approval); *see also* 30A C.J.S. Escrows § 18 ("The liability of a depositary or escrow holder is both fixed and limited by the contract under which he or she undertakes to perform the impartial function of stakeholder. . . . It is the duty of an escrow holder to comply strictly with the instructions of the principal, and if the escrow holder disposes of the property of his or her principal in violation of these instructions, or otherwise breaches that duty, he or she will be responsible for any loss occasioned thereby."); 28 Am. Jur. 2d Escrow § 25 ("The depositary is under a duty not to deliver the escrowed property to anyone except upon strict compliance with the conditions imposed by the escrow agreement.").

In this case, there was no risk of physical injury and the damages alleged are purely financial in nature. The plaintiff does not claim to have been an intended beneficiary of the

escrow agreement governing DLO's obligations or that it justifiably relied on DLO's misrepresentations under a theory of negligent misrepresentation, as countenanced by the Restatement (Second) of Torts § 552. There are no allegations that DLO was aware of collusion or fraud in the disbursement of funds. Application of the six-factor balancing test adopted by the California and Washington courts would not aid Cadence either: (1) the transaction that DLO undertook was not intended to affect or benefit Cadence. Rather, DLO was engaged by the Cammerons and Bostick to assist them in closing the real estate transaction between themselves, and any impact that transaction had on Cadence was merely collateral to the primary purpose of the escrow. (2) Cadence does not allege any facts suggesting that DLO should have foreseen that the Cammerons would breach their contractual obligations to Cadence.[5] (3) The Cammerons apparently failed to transmit the funds disbursed in the transaction to Cadence, despite their contractual obligation to do so, which satisfies the "certainty of injury" element, but that element alone does not justify the finding of a duty. (4) Like the California Supreme Court, this court concludes that "there is not a sufficiently close connection" between the disbursement of funds to the Cammerons and the injury suffered by Cadence "to warrant imposition of a duty of care." *Summit Fin'l Holdings*, 41 P.3d at 555. Cadence's injury was caused by the Cammerons' breach of their contractual obligations to Cadence, not by DLO's compliance with its own contractual obligations to the parties who engaged it to act as title insurer and escrow agent. And (5 and 6), as for the "moral blame" factor, "compliance by [DLO] with its fiduciary duty to follow the instructions of the parties to the escrow was not blameworthy and is, instead, a policy

---

[5] Even if DLO arguably might have foreseen that disbursement of the funds to the Cammerons might injure Cadence, this element, standing alone (or combined with the actual damage to Cadence), still would not be sufficient to justify the finding of a duty. *Accord Summit Fin'l Holdings*, 41 P.3d at 555 n.7 ("[F]oreseeability of financial injury to third persons is not alone sufficient to impose liability for negligent conduct.").

consideration that militates against concluding the company had a tort duty in this case." *Id.*

In sum, based on the Tennessee Supreme Court's application of the economic loss doctrine and its adoption of § 552 of the Restatement (Second) of Torts, and based on cases around the country addressing factually similar scenarios, the court finds as matter of law that, even accepting as true all the facts stated in the Verified Complaint, DLO did not owe a duty of care to Cadence under the circumstances presented here. Consequently, Cadence cannot establish that DLO is liable to it under a negligence theory. On that basis alone, DLO's Motion to Dismiss must be granted.

**V.      Motion for Sanctions**

Also pending is DLO's Motion for Sanctions. (Doc. No. 19.) At Cadence's request, the court stayed briefing on this motion until after the resolution of the Motion to Dismiss. The court, however, will deny the motion without requiring Cadence to respond to it.

Although the court has found that the Complaint fails to state a claim for which relief may be granted, DLO's briefing on the issue of whether it owed a duty to Cadence under Tennessee law was marginally helpful, at best, and the court has not found that dismissal would have been justified under any of the other arguments espoused by DLO. Mere failure to state a claim for which relief may be granted, under the circumstances presented here, does not warrant the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure, nor is there any showing that 28 U.S.C. § 1927 applies or that Cadence or its attorneys have acted in bad faith, vexatiously or wantonly.

**VI.      Conclusion**

Because the court finds as a matter of law that the defendant did not owe a duty of care to the plaintiff under the circumstances presented here for purposes of establishing a negligence

claim, the court will grant the defendant's Motion to Dismiss. The defendant's Motion for Sanctions will, however, be denied.

An appropriate Order is filed herewith.

ENTER this 20th day of March 2018.

_____
ALETA A. TRAUGER
United States District Judge